IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EARNEST SCOTT, Jr., | : |
|     Plaintiff | : |
|        v. | : Case No. 3:22-cv-52-KAP |
| PENNSYLVANIA DEPARTMENT OF | : |
| CORRECTIONS, *et al.*, | : |
|     Defendants | : |

<u>Memorandum Order</u>

      For the reasons below, the defendants' motion for summary judgment at ECF no. 90 is granted. The Clerk shall enter judgment for the defendants and close this case. This is a final appealable order. Because plaintiff is a three-strike litigant, he is not granted leave to proceed *in forma pauperis* on appeal in this matter. *See* ECF no. 18 in <u>Scott v. Myers</u>, No. 24-2386 (3d Cir. November 25, 2024), *denying leave to appeal in forma pauperis from judgment in* <u>Scott v. Department of Corrections</u>, Case No. 3:21-cv-194-SLH-KAP (W.D.Pa.).

      Plaintiff Earnest Scott is an inmate formerly housed at S.C.I. Houtzdale. Scott's complaints about the conditions of his confinement during that custody produced eight civil complaints in this district. The complaint in this matter (a consent case) was filed at ECF no. 12 in April 2022, following a use of force on December 29, 2021 that resulted from Scott disobeying an order. Scott claimed that the use of force violated the Eighth Amendment under <u>Whitley v. Albers</u>, 475 U.S. 312, 322 (1986), Complaint ¶¶ 27-42, and that the restrictions subsequently placed on him as a result of the institution of disciplinary proceedings for disobeying an order violated Title II of the Americans with Disabilities Act and the parallel sections of the Rehabilitation Act, Complaint ¶¶ 47-50, 69-73, 85-93. Scott also claimed, as he does in almost every complaint, that all the actions or inactions by all corrections personnel, including the disciplinary proceedings, were caused by hostility to his prolific litigation activity and thus constitute retaliation against him in violation of the First Amendment under <u>Rauser v. Horn</u>, 241 F.3d 330 (3d Cir. 2001), and <u>Mitchell v. Horn</u>, 318 F.3d 523 (3d Cir.2003). Complaint ¶51-58, 74.

      In <u>Scott v. Department of Corrections</u>, Case No. 3:22-cv-221-SLH-KAP (W.D.Pa.) (not a consent case), Scott claims that the medical care provided to him in the wake of the use of force violated the Eighth Amendment under <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs"). Scott's objections to my Report and Recommendation in the latter case are pending.

      Defendants have moved for summary judgment and the matter has been fully

1

b

briefed. ECF no. 90 (motion), ECF no. 91 (defendants' brief), ECF no. 92 (statement of material facts), ECF no. 93 (appendix of exhibits), ECF no. 96 (plaintiff's statement of material facts), ECF no. 97 (plaintiff's brief and appendix of exhibits).

For any reviewing court, the place to start is ECF no. 95, the handheld video recording of the events of December 29, 2021. *See* United States v. Clotaire, 963 F.3d 1288, 1294 (11th Cir. 2020)(videos are self-authenticating business records under Fed.R.Evid. 803(6)). As the Supreme Court has held:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott v. Harris, 550 U.S. 372, 380 (2007). *See also id.*, 550 U.S. at 381, referring to a party's description of events contradicted by a video record as a "visible fiction" that should be ignored.

The background facts leading to the preservation of the escort are not in dispute: Scott, in restraints, is being escorted from an out-of-cell appointment (according to Scott, it was with the Program Review Committee, Complaint ¶29) back to his cell by several male officers. Throughout the 30-minute video there is a constant but indecipherable background noise of other inmates and the clanging of metal doors. The corrections officers are wearing what I would call Covid masks and have on what appear to be medical gloves. At approximately 10:18 a.m. Scott stumbles as he climbs a flight of stairs (foreshadowing disputes about the video record as a whole, Scott contends he was somehow pushed to the ground and up the stairs; whether Scott was pushed up the stairs, stumbled, or sagged to the ground as an act of passive disobedience cannot be definitively decided, but the incident is trivial), and a few seconds later arrives at and enters his cell. Scott's wrists are secured behind his back and there is a tether from them held by an officer. Officers repeatedly tell Scott to back up to the door and put his wrists out through the aperture in the door so that his restraints can be recovered without leaving an officer

in the cell with an unrestrained Scott. Scott repeatedly replies that the officers are pulling on his hands and wants to see a captain. The video allows no dispute about the fact that Scott is not complying with the order to put his wrists where his restraints can be removed. *See also* Complaint ¶ 31: "I refused to be uncuffed [until I saw a psychiatrist.]" After minute or so of this, during which Scott demands that the officer recording events "put the camera on the window" (and the recording officer does) some corrections officer (Scott identified him as defendant McCoy, Complaint ¶32), orders the cell door to be remotely opened and the same or another officer orders that Scott be "taken down to the ground." Several officers enter and without punches or kicks or anything of the sort manage to get Scott (who is not kicking or punching either, but who continues a stream of verbal complaints that officers are trying to break his arm interspersed with "ha-ha, ha-ha" that could be described as stage laughter) to a prone position. Subsequently, someone orders Scott removed from the cell and taken to "Charlie one" (what Scott calls a hard cell from the lack of running water, Complaint ¶38) "tethered in the back." Scott falls in the hallway, claims to have been pushed, and someone orders a spit mask. (Scott interprets this passage of events as someone ordering him taken to the ground again, *see* Complaint ¶38 but I missed hearing that in my review of the video. I will assume that order was in fact given.) A spit mask, which looks like a black cloth bag, is placed over Scott's head. Scott, masked, is then walked back down the stairs without incident. Scott repeatedly asks that the camera be focused on him and makes comments about whether officers are "gonna suck my dick." An impartial jury could conclude that Scott is trying to goad officers into some response.

On arrival at the destination cell at about 10:30, an officer states that "I will demonstrate an EID" and a buzzer sound is heard. No taser-like device is actually used at any point. Another officer holds a riot shield. There is a successful attempt by four officers to place Scott prone on a ledge/bench/bed built into the wall of the cell so that Scott's tether and clothes can be removed. At no point does anyone punch or kick Scott, nor does Scott make any sound or break in sound consistent with being punched or kicked. Scott, once prone on the bed, keeps up his comments, *e.g.* "that's excessive force" and "no need to cut my socks off." At approximately 10:36 a female nurse appears and appears to examine Scott. After a minute she leaves, Scott is moved to the floor, and the lower part of Scott's naked body is obscured by what appears to be a smock or blanket. At approximately 10:40 Scott is backwards-walked to the door to the cell and his wrists are directed to the aperture in the cell door. His restraints are removed. Scott turns and faces the door. An officer produces a small digital camera and takes still photographs of Scott, including Scott posing with his mouth open to indicate where Scott believes he has sustained an injury. The officers other than the video camera operator leave. Scott puts the smock on the ledge to use as a sheet and lies down supine on it. The camera officer records Scott in no visible distress for a minute or so, until about 10:44. The scene then shifts to a hallway outside the cell area. A supervisory officer verbally checks with each of

3

six corrections officers and the nurse who examined Scott to make sure none of them sustained any injury or were spit on, and then orders the camera turned off.

No jury viewing this evidence could find any action by any officer at any point to be a malicious and sadistic use of force within the meaning of Whitley v. Albers. Scott argues that the use of force was excessive because it was unnecessary. Scott does not get to choose whether to obey orders or insist that his conditions for obeying them be respected. The relevant factors for a court to consider are: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Id.*, 475 U.S. at 319. *See also* Smith v. Mensinger, 293 F.3d 641, 648-49 (3d Cir.2002), *quoting* Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir.2000). The type and severity of the injury, if any, that Scott suffered is relevant to the question of liability as well to damages. *See* Grayer v. Edison Twp., 198 Fed.Appx. 203, 209 (3d Cir.1998)(Fourth Amendment).

Scott's lack of compliance with orders gave rise to a need for the use of force. That force was initially applied only in furtherance of the removal of Scott's restraints; once Scott had disobeyed the orders issued in the attempt to remove Scott's restraints, force was used only in furtherance of transferring Scott to a different cell. From the limitations of the video, which cannot see through the corrections officers at points where they are obscuring a direct view of Scott, I cannot rule out the physical possibility that someone could have pinched Scott or slapped or punched him surreptitiously with a punch that had a travel distance so short a distance that the video record did not pick it up, but no rational person could fail to see that defendants, individually and collectively, tempered their use of force. Scott himself characterizes his injuries as *de minimis*. ECF no. 97 at 6. I note that I could not hear any of the derogatory terms or threats to use oleoresin capsicum spray Scott alleged he heard, but as a matter of law a verbal threat not carried out is not an excessive use of force.

The dispositive question is whether the objective evidence presents a genuine issue of fact about any defendant acting maliciously and not in a good faith attempt to maintain order, and in deciding that question it is irrelevant how Scott characterizes defendants' actions because, as the Court of Appeals has observed, terminology doesn't matter. Grayer v. Township of Edison, *supra*, 198 Fed. Appx. at 208-09 (in a Fourth Amendment case with a lower burden than in a Whitley v. Albers claim, the defendant's knocking one plaintiff onto a kitchen table in the course of entry into the kitchen and punching or pushing another plaintiff out of the way were not unreasonable uses of force, especially given the lack of injury, and whether the use of force was described as a "punch" or a "push" was immaterial.)

Scott's ADA/RA and retaliation claims are insubstantial tag-along claims that are standard features of Scott's complaints. Typically Scott attempts to get double duty from a complaint alleging a denial of medical care by alleging that the defendants have by the same conduct violated the ADA/RA claims. Here, Scott alleges that various restrictions he was on after this disobedience of orders violated the ADA/RA because they deprived him of attendance at some of the programming he would otherwise have received for his mental illness (Scott is also diabetic and receives medical attention for it every day, and his medical records do not show any interruption in his medical care) violated the duty of an entity subject to the ADA/RA to enter into an interactive process when an accommodation of a disability is requested.

There are two problems, both also familiar to Scott from his other complaints. First, under the ADA/RA there is no private right of action that allows Scott to sue individual defendants for money damages. The substantive standards for claims under the ADA and the Rehabilitation Act are the same. Furgess v. Pennsylvania Department of Corrections, 933 F.3d 285, 288 (3d Cir. 2019). Actions against "public entities" do not allow for liability either against individual persons or against private corporations contracting to provide healthcare with those public entities. Matthews v. Pennsylvania Department of Corrections, 613 Fed.Appx. 163, 169–70 (3d Cir. 2015)(dismissing all ADA and RA claims except against the DOC). See 42 U.S.C.§ 12132 ("Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a **public entity**, or be subjected to discrimination by any such **entity**." (emphasis added)); 42 U.S.C.§ 12131 (a "public entity" is (a) any State or local government; (b) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (c) the National Railroad Passenger Corporation, and any other commuter authority).

For an ADA/RA claim against the defendants in their official capacities or the Department of Corrections itself, Scott must show: (1) he is a qualified individual; (2) with a disability; (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) **by reason of** his disability. See e.g., Bowers v. NCAA, 475 F.3d 524, 553 n.32 (3d Cir.2007)(my emphasis).

Scott does not show or even allege a credible claim in the complaint that any restrictions placed on him were **because** of any disability. Much less does Scott allege that anyone who placed restrictions on him did so knowing that his rights were substantially likely to be violated. See Haberle v. Troxell, 885 F.3d 170, 181 (3d Cir.2018); Matthews v. Pennsylvania Department of Corrections, 827 Fed.Appx. 184, 187–88 (3d Cir.2020). Scott, as in other cases, considers the fact of his mental illness to forbid any

5

defendant from taking any disciplinary action against him or preventing him from continuing programming on the same schedule that he would be on if there were no disciplinary proceedings against him. That is not the case. Whether Scott's claim is characterized as alleging a denial of access to programs or the violation of a duty under the ADA/RA to engage in an interactive exploration of accommodations, prison officials, just like employers, have no duty to engage in that process after the fact when the accommodation is sought as an alternative to disciplinary proceedings. An assertion that an accommodation can be sought as a pause or alternative to ongoing disciplinary proceedings in prison is just as "too little, too late" as it is in the workplace. *See* Yoho v. Bank of New York Mellon Corp., No. 2:17-CV-917-NR, 2020 WL 7336579, at *5 (W.D. Pa. Dec. 14, 2020)(collecting cases), *aff'd,* 2022 WL 296637 (3d Cir. Feb. 1, 2022). Scott does not even at this stage of the proceeding point to any accommodation that does not amount to excusing any misconduct he commits.

Finally, Scott's retaliation claims require evidence that: (1) that Scott took some action protected by the constitution; (2) that a defendant took action against him that would be sufficient to deter a person of ordinary firmness from persisting in that protected conduct; and (3) that the protected conduct **caused** the adverse action. It is Scott's standard practice to argue, as he does here, that the temporal proximity of his constant litigation activity to any adverse action in itself provides evidence that the adverse action was caused by hostility to that activity. That bald assertion rests on an invalid syllogism: 1) inmate grievances accuse defendants or their coworkers of wrongdoing 2) no one likes being accused of wrongdoing 3) defendants act on their dislike by retaliating.

For a valid inference of causation to flow from the foregoing premises, it has to be reasonable to infer that a defendant's dislike of criticism would rise to such a level as to cause the defendant to take some wrongful action. That requires facts: in prison or out, a claim of retaliation based on the assumption that any level of criticism is a sufficient trigger for any subsequent action is frivolous. *See e.g.* Moss v. U.S. Secret Service, 572 F.3d 962, 970–71 (9th Cir. 2009). In Moss, plaintiffs alleged that they were retaliated against for their anti-administration protest signs by being moved out of an area near where the President was dining. At the pleading stage the Ninth Circuit rejected as an "impermissible" assumption the allegation that it was the viewpoint expressed in the protest signs that caused the Secret Service to order the protesters moved, especially where a nonretaliatory motive was obvious. (The plaintiffs acknowledged that the Secret Service instructed that the protesters be moved to a comparable distance as pro-administration demonstrators to maintain a consistent perimeter.) Although in the real world we do assume that protesters are not as welcome as supporters, it is impermissible to infer that actions directed toward protesters are caused by their protest.

Scott makes a similar impermissible assumption about defendants' intent in the face of an obvious nonretaliatory motive. Given the uncontradicted evidence that defendants were responding to what Scott acknowledges was a disobedience of an order, no rational jury could find that defendants' use of force and subsequent disciplinary proceedings were not the result of that actual disobedience to orders, but instead were responses to pieces of paper Scott had submitted to the grievance system. That is ridiculous, especially as to the Eighth Amendment claim: no rational jury could conclude that while defendants were responding in real time to Scott's disobedience to orders on December 29, 2021, what they were really thinking about was whether Scott filed grievances.

Scott does not even allege any specifics about his grievance or litigation activity that make it plausible that any defendant feared or had suffered some negative consequence that would give that defendant a motive to respond. As the non-moving party in summary judgment, Scott cannot defeat summary judgment by asserting that a jury might disbelieve the defendants' assertion that they are not liable. Scott must present affirmative evidence of their culpable state of mind in order to defeat a properly supported motion for summary judgment. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989). In Williams, Judge Becker discussed the problem of affirmative evidence after the lower court granted summary judgment to police officers who failed to remove the belt from a pretrial detainee who committed suicide by hanging himself. Although the decedent's suicidal tendencies were "widely known" in the "small" police department there was no direct evidence that the specific defendant officers knew of them. Neither the fact that the decedent's several previous attempts were recorded on the police blotter accessible to the defendants nor the recognized "propensity of human beings to talk about bizarre behavior" were enough to allow an inference of that knowledge. *Id*. Scott's prolific filing of grievances does not even make him unusual at S.C.I. Houtzdale. His grievances hardly come close to the sort of memorable behavior as the decedent's previous bizarre suicide attempts described in Williams, and the corrections staff at Houtzdale is without question an order of magnitude larger than the West Chester Borough police department. Scott may sincerely believe that defendants think about his litigation activity as much as he does, but that belief is neither direct nor circumstantial evidence that defendants knew or cared about Scott's First Amendment activity.

A party moving for summary judgment bears the initial burden of pointing the district court to the basis in the record for its argument that there is no genuine issue of material fact. Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986). If the moving party does so, Fed.R.Civ.P. 56 then obliges the party opposing summary judgment to show by competent evidence that there is a genuine factual dispute, that is, that sufficient evidence exists so that a reasonable jury applying the relevant law could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986). Where

there is a factual dispute, all reasonable inferences must be drawn in favor of the nonmoving party, in this case the plaintiff. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Because the video record of the events of December 29, 2021 refutes any Whitley v. Albers claim, and Scott's theories of liability for his ADA/RA claim and his retaliation claim are unsupported, Scott has not shown that sufficient evidence exists so that a reasonable jury applying the relevant law to his claims could return a verdict for him.

Additionally, it is the case that corrections officers, like other government personnel who have to make judgments, are shielded from liability for money damages when their conduct does not violate clearly established legal rights. *See* Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). If official defendants "reasonably but mistakenly conclude[]" that their conduct conformed to the law they are entitled to immunity. Hunter v. Bryant, 502 U.S. 224, 227 (1991)(*per curiam*). Qualified immunity therefore operates to additionally protect the defendants involved in the use of force on December 29, 2021 from liability at the "sometimes hazy border between excessive and acceptable force," unless they were on notice that their conduct was unlawful. Couden v. Duffy, 446 F.3d 483, 492 (3d Cir.2006) (Fourth Amendment), *quoting* Saucier v. Katz, 533 U.S. 194, 206 (2001). Excessive uses of force by corrections officers can violate the Eighth Amendment, but just as in the Fourth Amendment context, a court must evaluate the legality of events in the specific context of the case, and not as abstract proposition. *See* Mullenix v. Luna, 577 U.S. 7, 12 (2015).

Because the facts of this case are "far afield," Rivera v. Redfern, 98 F.4th 419, 424 (3d Cir. 2024), from cases in which there is even a credible claim of excessive use of force, *see e.g*. Giles v. Kearney, 571 F.3d 318, 327 (3d Cir. 2009)(striking and kicking a subdued, nonresisting inmate in the side, with force enough to cause a broken rib and collapsed lung), the defendants sued for their participation in the use of force on December 29, 2021 would also be immune from liability on that claim.

DATE:  March 28, 2025

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel of record and by U.S. Mail to:

Ernest Scott, Jr. ND-3773
S.C.I. Albion
10745 Route 18
Albion, PA 16475-0001